JUDGE FRANK MONTALVO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2022 SEP -2  PM 12:06
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY

| | |
|---|---|
| BRANDON CALLIER, § § § Plaintiff, § § v. § § GARY D. NITZKIN, P.C. a/k/a UNITED § CREDIT EDUCATION LAW GROUP a/k/a § UNITED CREDIT EDUCATION SERVICES § LAW GROUP, a Michigan Professional § Corporation § § Defendants. § § | EP22CV0309 |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff is BRANDON CALLIER ("Callier"), a natural person, and was present in Texas for all calls, in this case in El Paso County.

2. Defendant GARY D. NITZKIN, P.C. a/k/a UNITED CREDIT EDUCATION LAW GROUP, a/k/a UNITED CREDIT EDUCATION SERVICES LAW GROUP ("Nitzkin" "Defendant") is a professional corporation organized and existing under the laws of Michigan and can be served via registered agent Gary D Nitzkin at 22142 West Nine Mile Road, Southfield, Michigan 48033.

### JURISDICTION AND VENUE

3. <u>Jurisdiction</u>. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

1

4. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

5. **Personal Jurisdiction.** This Court has specific personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff. Defendant sent mail to Plaintiff to his Texas address as a direct result of the phone calls at issue in this case.

6. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

7. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

8. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

9. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

12. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

14. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

15. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

16. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

17. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

19. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

20. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate

actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## The Texas Business and Commerce Code 305.053

21. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

22. Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## FACTUAL ALLEGATIONS

23. Plaintiff's personal cell phone XXX-XXX-X604 has been on the National Do-Not-Call Registry since December 2007.

24. Plaintiff was successfully registered on the National Do-Not-Call Registry more than 30 days before the calls at issue in this case and at all times relevant to this case.

25. Plaintiff received at least twenty (20) phone calls from Defendant over the span of a two-week period soliciting Plaintiff for credit card debt and credit repair services.

26. Each and every phone call Plaintiff received from Defendant Nitzkin was made using an automatic telephone dialing system ("ATDS").

27. Plaintiff did not have a prior existing business relationship with Defendant while Defendant was making unsolicited phone calls to Plaintiff.

28. Plaintiff received the first of at least 20 phone calls on February 18, 2022. This phone call lasted for less than a minute before dropping. The phone call displayed 480-779-4452 on the

caller ID.

29.     Plaintiff searched phone number 480-779-4452 in Google.  480-779-4452 is a spoofed caller ID used by Defendant to hide their true identity.

30.     On February 18, 2022, Plaintiff received an additional four phone calls from Defendant. Plaintiff did not answer any of these phone calls.

31.     On February 21, 2022, Plaintiff received two additional phone calls from Defendant at 10:43 AM and 12:11 PM.  Each of these phone calls lasted less than one minute.

32.     On February 21, 2022, at 2:54 PM Plaintiff received a phone call from Defendant. Plaintiff had now received a total of 8 phone calls from Defendant so Plaintiff pretended to be interested for the sole purpose of identifying the company responsible for the unauthorized phone calls.

33.     Defendant Nitzkin's representative asked Plaintiff questions about Plaintiff's income, credit status, debts, etc. in an attempt to solicit Plaintiff credit card debt and credit repair services.

34.     On February 24, 2022, at 1:56 PM Defendant Nitzkin's representative called Plaintiff while Plaintiff was in a funeral procession for his grandmother.  Plaintiff informed the caller he was at a funeral and not able to talk.  Plaintiff then hung up the phone.

35.     On February 24, 2022, at 1:59 PM Defendant Nitzkin's representative immediately called Plaintiff back after Plaintiff had informed Defendant Nitzkin's representative he was at a funeral. Plaintiff told Defendant Nitzkin's representative to not call back at that point.

36.     On February 24, 2022, Defendant Nitzkin's representative made additional phone calls to Plaintiff at 2:55 PM and 2:58 PM.

37.     On February 25, 2022, Defendant Nitzkin's representative called Plaintiff an additional three times. During the third phone call, Plaintiff enrolled in the program in order to determine the origin of the phone calls using the fake caller ID 480-779-4452.

38.     On February 25, 2022, Defendant Nitzkin's representative sent Plaintiff an email confirming his enrollment in the program and confirming the company responsible for the unauthorized phone calls. *See Exhibit A*.

39. Plaintiff received the following calls from Defendant Nitzkin:

(Table A).

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 02/18/2022 | 8:53 AM | 480-779-4452 | Call dropped in 1 minute |
| 2 | 02/18/2022 | 2:06 PM | 480-779-4452 | Missed Call |
| 3 | 02/18/2022 | 2:07 PM | 480-779-4452 | Missed Call |
| 4 | 02/18/2022 | 4:08 PM | 480-779-4452 | Missed Call |
| 5 | 02/18/2022 | 4:17 PM | 480-779-4452 | Missed Call |
| 6 | 02/21/2022 | 10:43 AM | 480-779-4452 | One min call. Call dropped |
| 7 | 02/21/2022 | 12:11 PM | 480-779-4452 | One min call. Call dropped |
| 8 | 02/21/2022 | 2:54 PM | 480-779-4452 | 16-minute call getting credit and income information |
| 9 | 02/21/2022 | 3:47 PM | 480-779-4452 | Called back |
| 10 | 02/24/2022 | 12:21 PM | 480-779-4452 | Missed call |
| 11 | 02/24/2022 | 12:22 PM | 480-779-4452 | Missed call |
| 12 | 02/24/2022 | 1:56 PM | 480-779-4452 | Told them I was at my grandmother's funeral and not to call. |
| 13 | 02/24/2022 | 1:59 PM | 480-779-4452 | Called right back |
| 14 | 02/24/2022 | 2:55 PM | 480-779-4452 | 2 min call |
| 15 | 02/24/2022 | 2:58 PM | 480-779-4452 | 3 min call |
| 16 | 02/25/2022 | 12:05 PM | 480-779-4452 | Missed call |
| 17 | 02/25/2022 | 12:20 PM | 480-779-4452 | Missed call |
| 18 | 02/25/2022 | 1:19 PM | 480-779-4452 | Signed up to see who was calling me |
| 19 | 03/01/2022 | 10:26 PM | 248-848-9065 | Canceled. They called back to try to get me to keep the service |
| 20 | 03/01/2022 | 10:49 AM | 248-848-9065 | Called back to talk me into keeping the service. |

40. Defendant employs outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

41. Defendant is not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations.

42. Plaintiff searched the Texas Secretary of State website, https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp ne Solicitors Search (state.tx.us), on August 28, 2022, and did not find a Texas Telephone solicitation registration for Defendant Nitzkin as required under Texas Business and Commerce Code 302.101.

43. Through information and belief Defendant Nitzkin did not have a valid Texas Solicitation registration on file when making the calls to Plaintiff at issue in this case.

44. Defendant Nitzkin does qualify for an exemption under § 302.101.

45. No emergency necessitated none of the alleged illegal robocalls.

46. Plaintiff sent an internal Do-Not-Call policy request to Defendant Nitzkin on August 28, 2022, to support@ucespp.net which is an email on their website they own and control https://ucesprotectionplan.com.

47. Defendant Nitzkin never sent Plaintiff an internal Do-Not-Call policy.

48. On information and belief, Defendant Nitzkin did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

49. Defendant Nitzkin participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

50. Mr. Callier has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

## THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA

51. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES AS A RESULT OF THE CALLS

52. Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

53. Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

54. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

55. Plaintiff has been harmed, injured, and damages by the calls including, but not limited to: reduced device storage space, reduced data plan usage, invasion of privacy, reduced enjoyment of his cell phone, reduced usage of his cell phone, anger, and frustration.

### The Plaintiff's cell phone is a residential number

56. The calls were to Plaintiff's cellular phone XXX-XXX-X604, which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on

cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

57. The actions of Defendant violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violates 47 USC 227(b). The calls by the defendants violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

58. The calls by Defendant violated Texas law by spoofing the caller IDs per 47 USC 227(e) which in turn violates the Texas statute.

### Violations of the Texas Business and Commerce Code § 302.101

59. The actions of Defendant violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

60. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

61. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

10

62. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

63. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## FIRST CAUSE OF ACTION

### Willful and/or Knowing Violation of 47 U.S.C. § 227
### Telephone Consumer Protection Act of 1991

64. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

65. Defendant and/or their agents placed calls to Plaintiff's cellular telephone.

66. Plaintiff never consented to receive calls from Defendant. Plaintiff has no relationship with Defendant.

67. Defendant's calls were made for purposes of advertising and marketing Defendant's credit card debt and credit repair services. These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

68. The calls were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

69. As a result of their unlawful conduct, Defendant repeatedly invaded the personal privacy of Plaintiff, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendant to stop their unlawful calling campaigns.

70. Not only did Defendant make these violating calls, but Defendant and/or their agents also did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

11

71. If the Court finds that Defendant willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))

72. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

73. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

74. Defendant called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

75. Plaintiff was statutorily damaged at least twenty (20) times under 47 U.S.C. § 227(c)(3)(F) by Defendant by the telephone calls described above, in the amount of $500 per call.

76. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

77. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## THIRD CAUSE OF ACTION

### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

78. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

79. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

   a. written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [2];

   b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [3]; and,

   c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

80. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

81. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## FOURTH CAUSE OF ACTION

### Violations of The Texas Business and Commerce Code 305.053

82. Plaintiff incorporates the foregoing allegations as if set forth herein.

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

83. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Callier cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

84. Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

85. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**

## FIFTH CAUSE OF ACTION

### (Violations of The Texas Business and Commerce Code 302.101)

86. Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

87. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

88. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a)**.

89. Plaintiff is entitled to recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees. **Texas Business and Commerce Code 302.302(d)**.

## I. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendant jointly and severally as follows:

A.  Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.  A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law;

C.  An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for 20 calls.

D.  An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for 20 calls.

E.  An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053 intentional violations jointly and severally against the corporation for 20 calls.

F.  An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporation for 20 calls.

G.  An award to Plaintiff of damages, as allowed by law under the TCPA;

H.  An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity.

I.  Such further relief as the Court deems necessary, just, and proper.

Plaintiff requests a jury trail for all claims that may so be tried.

Dated September 2, 2022,                                Respectfully Submitted,

*[signature]*

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail Drive
El Paso, TX 79912
915-383-4604

 Gmail     JUDGE FRANK MONTALVO   Brandon Callier <callier74@gmail.com>

**Confirmation Of Your Protection Plan Enrollment**
1 message

**UCES Protection Plan** <info@ucespp.net>                                      Fri, Feb 25, 2022 at 12:52 PM
Reply-To: UCES Protection Plan <info@ucespp.net>
To: Callier74@gmail.com

EP22CV0309

2/25/2022



## Thank you for enrolling in the UCES Protection Plan!

We have processed your initial $89 payment, and your account is now available for you to activate. Please note that this program has a $89 ongoing monthly fee.*

Your UCES Protection Plan gives you access to many tools that will help you understand and work with your finances in a more effective way. To begin, log into your account using your email address and the last four digits of your SSN as the password.

ACCESS ACCOUNT

brandon callier

### Access your Protection Plan Account to

- Acknowledge the UCES Protection Plan Terms and Conditions
- Activate your Credit Restoration
- Activate your InfoArmor Protection
- Start building your budget

**EXHIBIT A**

| | |
|---|---|
| **Customer Support** | **Email** |
| 248-848-9065 | support@ucespp.net |
| **Payment Services** | **Website** |
| 248-848-9065 | www.ucesprotectionplan.com |

*UCES will charge $89 per month for the UCES Protection Plan, unless you notify the company of your intent to cancel enrollment in the UCES Protection Plan. Payments will be automatically debited from the payment method provided (credit or debit card or checking account). Failure to make your payment on the established due date will result in suspension/cancellation of all activated programs.

You may cancel this contract within three (3) business days after enrollment and receive a full refund. Cancellation of your Protection Plan will affect your agent activity status. Monthly membership fees are non-refundable; no refunds will be issued on previous payments. *You must be an active sales agent to be covered under the life insurance. See the Protection Plan web site for more details.

© United Wealth Education

unsubscribe